# EXHIBIT A



SERVICE COPY

D2549723

# CITATION

**JANAI SHARKEY, ET AL**
(Plaintiff)

**NUMBER C-686454   SEC. 25**

**VS**

**19th JUDICIAL DISTRICT COURT**

**MEDOVA HEALTHCARE FINANCIAL GROUP, LLC D/B/A LIFESTYLE HEALTH PLANS**
(Defendant)

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

TO:   **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC D/B/A LIFESTYLE HEALTH PLANS**
**THROUGH ITS REGISTERED AGENT FOR SERVICE OF PROCESS:**
**NATIONAL REGISTERED AGENTS, INC**
**3867 PLAZA TOWER DRIVE**
**BATON ROUGE,  LA 70816**

GREETINGS:

Attached to this citation is a certified copy of the petition*.  The petition tells you what you are being sued for.

You must EITHER do what the petition asks OR, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleading in the office of the Clerk of Court at 300 North Boulevard, Baton Rouge, Louisiana.  If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be rendered against you without further notice.

This citation was issued by the Clerk of Court for East Baton Rouge Parish on **AUGUST 13, 2019.**



*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

**Requesting Attorney: RICHARDS, KEITH P**
**(225) 767-3755**

*The following documents are attached:
**PETITION**

---

**SERVICE INFORMATION:**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:
**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**SECRETARY OF STATE:** By tendering same to the within named, by handing same to _____.

**DUE AND DILIGENT:**    After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:$_____
MILEAGE$_____
TOTAL:  $_____

_____
Deputy Sheriff
Parish of East Baton Rouge

**CITATION-2000**

**RECEIVED**

**AUG 1 5 2019**

E B R  SHERIFF'S OFFICE

EAST BATON ROUGE PARISH
Filed Aug 13, 2019 9:45 AM
Deputy Clerk of Court
FAX Received Aug 08, 2019

C-686454
25

JANAI SHARKEY AND
JACK J. SHARKEY

NUMBER: 686454 · SECTION: 25

19th JUDICIAL DISTRICT COURT

VERSUS

PARISH OF EAST BATON ROUGE

MEDOVA HEALTHCARE FINANCIAL
GROUP, LLC d/b/a LIFESTYLE
HEALTH PLANS

STATE OF LOUISIANA

*****************************************************************

### PETITION FOR DAMAGES

*****************************************************************

NOW INTO COURT, through undersigned counsel, come Plaintiffs, **JANAI SHARKEY**

**AND JACK J. SHARKEY,** who respectfully represents the following:

### PARTIES

1.

Plaintiffs, Janai Sharkey and Jack J. Sharkey, are competent people of the full age of majority

domiciled and residing in the Parish of East Baton Rouge, State of Louisiana.

2.

Janai Sharkey and Jack J. Sharkey are the natural parents of the minor child Jack Benton

Sharkey.

3.

Made defendant herein is **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC d/b/a**

**LIFESTYLE HEALTH PLANS** ("Medova/Lifestyle"), a *foreign third party insurance*

*administrator* licensed by the Louisiana Department of Insurance to transact business in the State

of Louisiana which has designated the National Registered Agents, Inc., 3867 Plaza Tower Drive

Baton Rouge, LA 70816 as its agent for service of process.

### SUMMARY OF CLAIMS

4.

By means of this litigation, Janai Sharkey and Jack J. Sharkey seek recovery of damages and

other legally-prescribed recovery resulting from the denial by Medova/Lifestyle, administrator of the

group health plan covering the Sharkey family, of claims for benefits submitted by health care

providers who treated Janai Sharkey and Jack Benton Sharkey for injuries sustained in a 08/05/18

motor vehicle accident. The Factual Predicate for this case are set forth in Paragraphs 6 through 21.

5.

Medova/Lifestyle asserted different bases for denying claims for benefits submitted by Jack

Page 1 of 20


Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Benton Sharkey's and Janai Sharkey's respective health care providers. Therefore, the facts specifically related to the submission and denial of claims for benefits by Jack Benton Sharkey's health care providers as well as the issues thereby presented are set forth in Paragraphs 22 through 70. Thereafter, the facts specifically related to the submission and denial of claims for benefits by Janai Sharkey's health care providers as well as the issues thereby presented are chronicled in Paragraphs 71 through 102. Finally, the recovery sought Janai Sharkey and Jack J. Sharkey against Medova/Lifestyle is identified in Paragraphs 103-109.

### **FACTUAL PREDICATE**

6.

Since 1999, Janai Sharkey has been employed by NCES-Steel Enterprises.

7.

From 01/01/17 to 12/31/18, the Sharkeys were covered under an Employee Group Benefit Plan ("Plan") sponsored by NCES-Steel Enterprises, which provided group medical benefits to qualifying employees, including Janai Sharkey, and specified dependents, including Jack J. Sharkey and Jack Benton Sharkey.

8.

The Plan was self-funded by NCES-Steel Enterprises, which designated Medova/Lifestyle as claims administrator of the Plan.

9.

The terms and conditions of the Plan were set forth in a document entitled "Employee Benefit Booklet," a copy of which was provided by Medova/Lifestyle to undersigned counsel for Plaintiffs on 05/20/19. Every reference in this pleading to Plan "Employee Benefit Booklet" is reproduced from the copy of the document provided by Medova/Lifestyle.

10.

On 08/05/18, Jack Benton Sharkey and Janai Sharkey both sustained significant personal injuries in a motor vehicle accident caused by Janai Sharkey.

11.

In the wake of the collision, Jack Benton Sharkey and Janai Sharkey both received considerable treatment for their respective personal injuries from an array of health care providers.

12.

Page 2 of 20


Certified True and
Correct Copy
CertID: 2019081300842

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Each of the several health care providers who treated Jack Benton Sharkey and Janai Sharkey submitted claims for payment to Medova/Lifestyle.

13.

Medova/Lifestyle refused to provide coverage and make any payment on any claim submitted by Janai Sharkey's health care providers.

14.

Medova/Lifestyle did not notify Janai Sharkey that it was denying coverage of all claims for benefits submitted by any of Janai Sharkey's health care providers.

15.

The Employee Benefit Booklet provides in three distinct locations that Medova/Lifestyle's denial of a claim for benefits under the Plan will be communicated directly by Medova/Lifestyle to the employee.

16.

In the section entitled "Submission of a Claim for Payment," the Employee Benefit Booklet provides at page 51 that:

> In each case where the Plan pays benefits or determines that it is not responsible for the medical claim, the Employee will receive an Explanation of Benefits which will outline the basis for the Plan's payment. The Employee will receive a written or electronic "denial" notification. In addition, the Plan's payment of less than 100% of the submitted claim (under the terms of the Plan) will entitle the Employee to appeal the decision under the rules governing adverse claim determination.

17.

In the very next paragraph on page 51 of the Employee Benefit Booklet, in a section entitled "If an Employee Claim Is Denied," Medova/Lifestyle states:

> If an Employee's claim is denied, the Plan or its designated Claim Administrator will notify the Employee in writing or electronically (oral notification follow by written notification in the case of urgent care claims) why the claim was denied, and the Plan will provide additional information that will help the Employee pursue the right to appeal the adverse determination. The Employee chooses to appeal the Plan's adverse determination, the appeal will be governed by rules that assure the Employee a 'full and fair' review.

18.

Under the heading of "Claims Payments," the Employee Benefit Booklet provides on page 48 that:

> The Claims Administrator will pay all eligible medical and dental benefits from the Plan directly to the service provider unless satisfactory documentation is furnished

Page 3 of 20



Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

to the Claims Administrator indicating that the service provider has been paid. If benefits are not payable, the Employee will be advised in writing by the Claims Administrator.

19.

Janai Sharkey did not receive either an Explanation of Benefits ("EOB") or any other written notification from Medova/Lifestyle advising her that Medova/Lifestyle had denied coverage of claims for benefits submitted by her health care providers.

20.

Medova/Lifestyle likewise refused to provide coverage on multiple claims for benefits submitted by Jack Benton Sharkey's health care providers.

21.

Neither did Janai Sharkey receive an Explanation of Benefits ("EOB") or any other written notification from Medova/Lifestyle advising her that Medova/Lifestyle had denied coverage of claims for benefits submitted by Jack Benton Sharkey's health care providers.

## MEDOVA/LIFESTYLE'S DENIAL OF COVERAGE FOR CLAIMS SUBMITTED BY JACK BENTON SHARKEY'S HEALTH CARE PROVIDERS

22.

Janai Sharkey and Jack J. Sharkey first learned that Medova/Lifestyle had denied coverage of certain claims for benefits which had been submitted by Jack Benton Sharkey's health care providers in November, 2018, when Jack J. Sharkey received a copy of a 10/30/18 certified letter from Joseph Titone to State Farm Mutual Automobile Insurance Company ("State Farm") claims adjuster Carrie Goodman. The Baton Rouge attorney's letter to Janai Sharkey's automobile liability insurer was for the purpose of perfecting a health care provider lien on behalf of Our Lady of the Lake Hospital, Inc. ("OLOL") against any recovery by Jack J. Sharkey, on behalf of the minor child, Jack Benton Sharkey, from State Farm.

23.

OLOL's attorney's lien letter indicated there was an outstanding indebtedness of $138,644.18 on three accounts for treatment provided to Jack Benton Sharkey between 08/05/18 and 08/11/18 and on 08/24/18.

24.

Given the staggering sum purportedly owed by the Sharkeys to OLOL, Janai Sharkey



**Certified True and Correct Copy**
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

contacted Medova/Lifestyle in order to ascertain when and how much Medova/Lifestyle had paid OLOL for services provided to Jack Benton Sharkey.

25.

Janai Sharkey spoke to multiple different representatives of Medova/Lifestyle over the course of November and December, 2018 and reported that the medical treatment both Jack Benton Sharkey and she had received since 08/05/18 was for injuries sustained in a one vehicle accident she had caused.

26.

Janai Sharkey also confirmed to Medova/Lifestyle personnel that she was covered by a State Farm automobile liability policy.

27.

By the time Janai Sharkey had contacted Medova/Lifestyle in November, 2018, after receiving a copy of the letter indicating there was an outstanding $138,644.18 balance owed on the accounts relating to the treatment provided to Jack Benton Sharkey at OLOL, Medova/Lifestyle had processed and made payments and/or imposed adjustments on multiple claims submitted by health care providers who had treated Jack Benton Sharkey for injuries he had sustained in the 08/05/18 motor vehicle accident.

28.

In October, 2018, Medova/Lifestyle processed the following, and possibly additional, claims for benefits by health care providers who had treated Jack Benton Sharkey after the 08/05/18 accident:

a)  OLOL (Acct. #10101363356 for $1,120.00):

10/09/18: $195.19 (payment), $80.81 (contractual write-off)
10/17/18: $10.04, $82.72 (contractual write-offs)
10/22/18: $88.78 (payment), $31.22 (contractual write-off);

b)  Baton Rouge Orthopaedic Clinic (Acct. #371352 for #$22,428.00)
10/10/18: $3,099.19, $50.82 (payments), $774.80, 12.71 (transfers from insurance), $18,289.01, $26.47 (contractual adjustments)
10/18/18: $165.64 (contractual adjustment), $9.74 (transfer from insurance);

c)  Pediatric Intensivist of LA (Acct. # 11330.0 for $1,150.00):
10/10/18: $187.10 (payment), $341.12 (insurance write off)
10/26/18: $187.10 (payment), $341.12 (insurance write off)

d)  CVT Surgical Center (Acct. # 1-51518.0 for $330.00)



Certified True and Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

10/10/18: $60.36 (payment), $124.55 (insurance write off)
10/22/18: $45.72 (payment), $72.85 (insurance write off)

29.

After Janai Sharkey made contact with Medova/Lifestyle in November, 2018, additional claims for benefits by health care providers who had treated Jack Benton Sharkey after the 08/05/18 accident were processed by Medova/Lifestyle, including:

a)    East Baton Rouge Parish EMS (Acct. # B-0046157 for $1,633.40)
       11/28/18: $598.73 (payment)

b)    OLOL (Acct. # 4000002325239 for $8,513.00):
       12/31/18: $5,391.47 (payment), $1,276.95 (contractual write-off)

30.

On 04/18/19, undersigned counsel for Plaintiffs requested copies of all EOBs issued by Medvoa/Lifestyle relating to claims for benefits submitted by Jack Benton Sharkey's health care providers for services provided on and after 08/05/18, whether or not the claims were paid by Medova/Lifestyle. On 05/20/19, Medova/Lifestyle provided copies of 11 EOBs purportedly created for claims for benefits submitted by Jack Benton Sharkey's health care providers processed between 10/24/18 and 03/05/19.

31.

All 11 claims for benefits were denied by Medova/Lifestyle. According to the EOBs produced by Medova/Lifestyle and seen by Janai Sharkey and Jack J. Sharkey for the first time in the days following 05/20/19, 10 of the 11 claims for benefits by these health care providers who treated Jack Benton Sharkey's were denied on the following basis: "Third party liability expenses not eligible under plan."

32.

As detailed in Paragraphs 26 and 27, Medova/Lifestyle had made payments and mandated contractual adjustments and write-offs on at least six claims for benefits by Jack Benton Sharkey's health care providers processed between 10/10/18 and 12/31/18. Obviously, therefore, Medova/Lifestyle did not deny those claims on the basis that they were third party liability expenses.

33.

It is likewise noteworthy that of the 11 claim denials reflected on the EOBs produced by Medova/Lifestyle on 05/20/19, three of the submitting health care providers, including OLOL, Baton

Page 6 of 20


**Certified True and Correct Copy**
CertID: 2019081300642

_Roger Hedges_
East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Rouge Orthopaedic Clinic and CVT Surgical Center, received payment from Medova/Lifestyle on other claims submitted for services provided to Jack Benton Sharkey between 08/05/18 and 08/11/18 and on 11/27/18.

34.

Furthermore, it bears noting that the 11 claims for services provided to Jack Benton Sharkey denied by Medova/Lifestyle included claims with the highest account balances. Among the claims denied by Medova/Lifestyle on the purported basis of "Third party liability expenses not eligible under plan" were the following:

a)      OLOL (Acct. #H40000022488840 for $130,749.94)
        Date denied: 10/19/18

b)      Southern Neuro Specialty LLC (Account balance of $153,050.00)
        Date denied: 02/06/19

c)      NeuroPro LLC (Acct. #1041172 for $92,725.00)
        Date denied: 02/06/19

35.

The Plan "Employee Benefit Booklet" makes clear on page 8 that the comprehensive medical benefits provided to employees and dependents include payment of "covered expenses," subject to applicable co-payments, deductibles and co-insurance, for inpatient hospital services, physician and surgeon services.

36.

The Plan document does enumerate certain exclusions to the what qualifies as "covered expenses" on pages 13-17. While the "Exclusions" section employees the term "covered charges" instead of the previously-used "covered expenses" when defining the medical benefits provided under the Plan, it appears the inconsistent language was not purposeful.

37.

Exclusion 48 on page 14 of the "Employee Benefit Booklet" provides:

Covered Charges will not include the following unless shown in Attachment #1 Additional Covered Expenses:

expenses related to a Sickness or Injury for which a third party is or may be responsible, unless such expenses are advanced as provided in the provision entitled Right of Reimbursement.

38.

The "Employee Benefit Booklet" contains no generally-applicable definition of "third party."

Page 7 of 20



Certified True and Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

There is a definition of the term in the section of the Plan document entitled "Third Party Recovery Provision" on page 36 which provides that "'Third Party' means any Third Party including another person or a business entity."

39.

The Plan document does not contain a "provision entitled Right of Reimbursement."

40.

As aforementioned, the Plan "Employee Benefit Booklet" does contain a section entitled "Third Party Recovery Provision," which is assumed to be the provision intended to be referenced despite the incongruent Plan document language.

41.

The "Third Party Recovery Provision" vests in Medova/Lifestyle a right of conventional subrogation against any third party which may be responsible for payment of the medical charges of a "Covered Person," defined in this section of the "Employee Benefit Booklet" as "anyone covered under the Plan, including minor dependents."

42.

While the "Third Party Recovery Provision" does reserve unto Medova/Lifestyle the discretion not to pay a Covered Person's medical charges "incurred on account of Injury or Sickness caused by a responsible Third Party," the same provision then makes clear that a Covered Person's acceptance of "benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer."

43.

Thus, Medova/Lifestyle's legal right of subrogation against a third party who might have been liable for payment of Jack Benton Sharkey's medical expenses vested on 10/09/18 when Medova/Lifestyle processed and issued payment on a claim submitted by OLOL for treatment provided to Jack Benton Sharkey on 08/05/18.

44.

The "Third Party Recovery Provision" endowed Medova/Lifestyle with significant legal means to secure reimbursement of the monies it paid to Jack Benton Sharkey's health care providers from a third party liable for payment of his medical expenses. The Plan language states as follows

Page 8 of 20



Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

on page 35:

> This Subrogation right allow the Plan to pursue any claim which the Covered Person has against any Third Party, or insurer, whether or not the Covered Person chooses to pursue the claim. The Plan may make a claim directly against the Third Party or insurer, but in any event, the Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical and dental expenses. This lien shall remain in effect until the Plan is repaid in full.

45.

With its conventional right of subrogation interest in any third party claim for payment of Jack Benton Sharkey's medical expenses clearly secured, there would have been no legitimate reason for Medova/Lifestyle to deny coverage of any claim for benefits by any of Jack Benton Sharkey's health care providers.

46.

Clearly, Medova/Lifestyle understood its obligation to process and pay covered expenses because it did pay the several claims identified in Paragraphs 26 and 27.

47.

Moreover, it should be noted that Medova/Lifestyle processed the claims identified in Paragraph 26 beginning on 10/09/18, which would have been before Janai Sharkey advised Medova/Lifestyle in November, 2018, that the medical treatment both Jack Benton Sharkey and she received commencing on 08/05/18 resulted from a motor vehicle accident she caused.

48.

Therefore, Medova/Lifestyle may not persuasively contend that the claims it denied were so processed because it lacked necessary information regarding whether a third party may have been responsible for the payment of Jack Benton Sharkey's medical expenses. Indeed, if that was the case, Medova/Lifestyle would not have covered any claims from Jack Benton Sharkey's health care providers.

49.

It is also a fact that as of November, 2018, Medova/Lifestyle was aware that there was no third party, within the purview of Medova/Lifestyle's obtuse definition of that term, responsible for the payment of Jack Benton Sharkey's medical expenses because Janai Sharkey, the employee Plan participant, caused the accident which resulted in the injuries by Jack Benton Sharkey treated by the claim-submitting health care providers.

Page 9 of 20


Certified True and
Correct Copy
CertID: 2019081300642

*Jgor Nickey*
East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

50.

Furthermore, even if Janai Sharkey could somehow be construed as a third party within the purview of the Medova/Lifesytle "Employee Benefit Booklet," she could not be adjudged legally responsible for the payment of Jack Benton Sharkey's medical expenses. Jack J. Sharkey, as natural tutor of the minor child Jack Benton Sharkey, could not sue Janai Sharkey for delictual damages as La. R.S. 9:291 provides a spouse with a legal immunity from suit by his/her spouse.

51.

The language contained in the Medova/Lifestyle "Employee Benefit Booklet" also makes it clear that Janai Sharkey's automobile liability insurer, State Farm, is not a third party as that term is used in the Plan document. The subrogation provision contained on page 35 of the Plan document and quoted in Paragraph 44 provides, in pertinent part, that:

> This Subrogation right allows the Plan to pursue any claim which the Covered Person has against any ***Third Party, or Insurer***, whether or not the Covered Person chooses to pursue the claim. The Plan may make a claim directly against ***the Third Party or insurer***. . . .

(Emphasis added)

52.

Neither does the "Coordination of Benefits" section of the Plan document, contained on pages 32-33 of the "Employee Benefit Booklet," provide a basis for Medova/Lifestyle's coverage denials of claims submitted by Jack Benton Sharkey's health insurers until after State Farm made medical payments coverage or liability coverage payments to either Jack J. Sharkey, Jack Benton Sharkey's natural tutor, or Jack Benton Sharkey's health care providers.

53.

By its very terms, the Plan's Coordination of Benefits rules for the determining the order of benefit payments only apply to "plans" which provide "medical, dental or vision care on a group basis."

54.

Therefore, because the Sharkeys' automobile insurance policy is not a "plan" within the purview of the Plan's prescribed Coordination of Benefits rules, Medova/Lifestyle could not have reasonably denied coverage of claims submitted by Jack Benton Sharkey's health care providers on the premise that State Farm was primarily responsible for payment of Jack Benton Sharkey's medical



**Certified True and Correct Copy**
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

expenses.

55.

Even if the Plan's Coordination of Benefits rules applied and could reasonably have been interpreted to require primary payment from State Farm of its medical payments coverage limit for Jack Benton Sharkey, which is expressly denied, Medova/Lifestyle received documentation of the exhaustion of State Farm's medical payments coverage limits for Jack Benton Sharkey.

56.

The referenced documentation, consisting of a 02/06/19 letter from State Farm's Carrie Goodman confirming payment of State Farm's $5,000.00 medical payments coverage limit on behalf of Jack Benton Sharkey, was transmitted to Medova/Lifestyle by Janai Sharkey on 02/06/19.

57.

Thus, interpreting the Plan document in a manner most favorable to Medova/Lifestyle, by 02/06/19 at the very latest, the claims by Jack Benton Sharkey's health care providers denied on the basis of "Third party liability expenses not eligible under plan" were payable by Medova/Lifestyle.

58.

As the "Employee Benefit Booklet" provisions quoted in Paragraphs 14 through 16 make clear, Medova/Lifestyle had the contractual obligation to provide Janai Sharkey with a written notification of each denial of a claim for benefits submitted by one of Jack Benton Sharkey's health care providers. Janai Sharkey did not receive notification from Medova/Lifestyle of a single claim denial notification regarding Jack Benton Sharkey until 05/20/19 pursuant to a 04/18/19 letter request to Medova//Lifestyle's Interim Director of Member Services, Julie Kiiker, by undersigned counsel for Plaintiffs on 04/18/19.

59.

In a section entitled "Appealing an Employee Initial Claim Decision," the "Employee Benefit Booklet" provides on page 51 that the "Employee must submit a written request . . . to the Plan within 180 days of *receipt of a denial notice* in order to initiate an appeal" (emphasis added).

60.

In the referenced 04/18/19 letter to Medova/Lifestyle, undersigned counsel for Janai Sharkey and Jack J. Sharkey requested an appeal of all claim denials pertaining to Jack Benton Sharkey. The appeal was formulated as follows:



Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Since I do not possess copies of any EOBs relating to claims submitted by Jack Benton Starkey's health care providers, I have no way of knowing when the 180 day appeal delay began to toll. Accordingly, in an abundance of caution, I hereby submit a request for an appeal of all claims denied by Lifestyle pertaining to treatment provided to Jack Benton Starkey on and after August 5, 2018.

61.

Therefore, a timely Plan-mandated appeal was made on 04/18/19 of each denial by Medova/Lifestyle of a claim submitted by one of Jack Benton Sharkey's health care providers, even though Plaintiffs did not receive any claim denial notices from Medova/Lifestyle until 05/20/19.

62.

Even if Janai Sharkey had previously received any of the EOBs which Medova/Lifestyle produced on 05/20/19, which is expressly denied, the written appeal request was timely because the oldest of the EOBs bears the date of 10/24/18, which is within 180 days of 04/18/19.

63.

In the referenced section pertaining to an employee appeal of a claim denial, the "Employee Benefit Booklet" provides on page 52 that the "Claim Administrator must notify the Employee (in writing or electronically) of the benefit determination within a reasonable period of time, but not later than 60 days."

64.

More than 60 days have passed since Janai Sharkey's 04/18/19 written request for an appeal of each denial by Medova/Lifestyle of a claim for benefits submitted by one of Jack Benton Sharkey's health care providers.

65.

Janai Sharkey and Jack J. Sharkey have exhausted the remedies prescribed by the Plan pertaining to each denial by Medova/Lifestyle of a claim for benefits submitted by one of Jack Benton Sharkey's health care providers.

66.

Medova/Lifestyle breached its contract with Janai Sharkey and Jack J. Sharkey by refusing to cover at least 11 claims for benefits submitted by health care providers of Jack Benton Sharkey, including, but not limited to, those specified in Paragraph 34, for covered expenses and/or covered charges.

Page 12 of 20


Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

67.

Medova/Lifestyle's refusal to provide coverage for the referenced claims by Jack Benton Sharkey's health care providers was unreasonable.

68.

Medova/Lifestyle's refusal to provide coverage for the referenced claims by Jack Benton Sharkey's health care providers was arbitrary and capricious.

69.

Not only were the denials by Medova/Lifestyle contrary to the Plan's provisions, but Medova/Lifestyle's processing of other claims by Jack Benton Sharkey's health care providers illustrates the Plan administrator's arbitrary and capricious approach to adjustment of claims for benefits clearly covered under the Plan.

70.

Medova/Lifestyle's refusal to provide coverage for the referenced claims by Jack Benton Sharkey's health care providers has render Jack J. Sharkey and Janai Sharkey liable to Jack Benton Sharkey's health care providers for $385,812.94.

## MEDOVA/LIFESTYLE'S DENIAL OF COVERAGE FOR CLAIMS SUBMITTED BY JANAI SHARKEY'S HEALTH CARE PROVIDERS

71.

As alleged in Paragraphs 13, 14 and 19, Medova/Lifestyle both refused to provide coverage for any claim submitted by Janai Sharkey's health care providers and failed to provide Janai Sharkey with any notification of said claim denials.

72.

On 02/05/19, Janai Sharkey was informed via telephone by a Medova/Lifestyle representative named "Mariquette" that the "claims were closed." Janai Sharkey interpreted Mariquette's message to be that the claims submitted by both her health care providers and Jack Benton Sharkey's health care providers were "closed."

73.

Mariquette confirmed for Janai Sharkey that the claims were "denied" prior to being "closed."

Page 13 of 20


Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

74.

Mariquette then advised Janai Sharkey that she needed to appeal to lodge a written request for an appeal in order to get the claims re-opened.

75.

Mariquette advised Janai Sharkey that the written request for an appeal could be submitted to Medova/Lifestyle by facsimile transmission of a written request to a number provided by Mariquette. Janai Sharkey was additionally advised that the appeal requested should be directed to Medova/Lifestyle's Kary Jones and that each page transmitted by facsimile should bear the claim number 20182322788.

76.

On 02/06/19, Janai Sharkey successfully transmitted to Medovas/Lifestyle's Kary Jones a six page facsimile which included a one page document entitled "Appeal Letter" which stated "I would like to start the appeals process."

77.

As aforementioned in Paragraph 53, the additional constituents of the facsimile transmission were separate letters dated 02/06/19 from State Farm's Carrie Goodman confirming payment of State Farm's $5,000.00 medical payments coverage limit on behalf of Jack Benton Sharkey and its $5,000.00 medical payments coverage limit on behalf of Janai Sharkey.

78.

Janai Sharkey believed her 02/06/19 written request for appeals applied both to denied claims submitted by Jack Benton Sharkey's health care providers and her health care providers.

79.

Janai Sharkey was therefore confused when she received on 03/10/19 a letter dated 02/28/19 from Medova/Lifestyle's "Teresa G." which advised that the appeal of claims submitted by Janai Sharkey's health care providers was denied but did not address the disposition of an appeal of the denials of certain claims by Jack Benton Sharkey's health care providers.

80.

According to the referenced 02/28/19 letter, Teresa G. advised Janai Sharkey that Medova/Lifestyle would deny all claims submitted by her health care providers relating to treatment for injuries sustained in the 08/05/18 motor vehicle accident.

Page 14 of 20


Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

81.

The stated basis for the denial of the appeal was that the services provided by the claim-submitting health care providers were "non-covered as a result of the member's engagement in illegal activity and are therefore excluded from the Plan."

82.

Medova/Lifestyle's Teresa G. cites Plan Exclusion 61 as the basis for the denials of claims submitted by Janai Sharkey's health care providers.

83.

Exclusion 61, contained on page 15 of the "Employee Benefit Booklet" provides:

Covered charges will not include the following unless shown in Attachment #1 Additional Covered Expenses:

Charges in connection with participation in an assault, felony, illegal act, strike, civil disorder, riot, or the intentional act of another during an altercation in which the Covered Person participated, other than as a spectator.

84.

Medova/Lifestyle's Teresa G. then states "per the police report on the accident, your blood alcohol content was over the state legal limit for the operation of a motor vehicle. Therefore, the claim will be reprocessed and denied per the Plan exclusion noted above."

85.

Pursuant to Louisiana law, an insurance policy should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code [*Holden Bus. Forms Co. v. Louisiana State Univ. Health Sci. Ctr.–Shreveport*, 39,638 (La. App. 2 Cir. 7/8/05), 908 So.2d 86], which provides in La. Civ. Code art. 2047 that words in a contract must be given their generally prevailing meaning.

86.

Louisiana insurance law likewise endows an insurer with the right to limit coverage as long as the limitations do not conflict with statutory provisions or public policy [*Gonzales v. Geisler*, 46,501 (La. App. 2 Cir. 9/21/11), 72 So.3d 992], but the insurer has the burden of proving that a loss comes within a policy exclusion [*McQuirter v. Rotolo*, 2011-0188 (La. App. 1 Cir. 9/14/11), 77 So.3d 76] and any ambiguity in an exclusionary clause is strictly construed against the insurer and in favor of coverage [*Kirby v. Ashford*, 2015-1852 (La. App. 1 Cir. 12/22/16), 208 So.3d 932 and



Certified True and Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

*Petrozziello v. Thermadyne Holdings Corp.*, 2015-1525 (La. App. 1 Cir. 2/17/17), 211 So.3d 1199, *writ denied*, 2107–0473 (La. 5/12/17), 219 So.3d 1104].

87.

Exclusion 61 in the Plan document does not provide an unambiguous basis for the denial of claims for benefits submitted by Janai Sharkey's health care providers.

88.

While other exclusions in the Plan document specify that claims for expenses or charges for particular types of health care services are not covered, Exclusion 61 provides only that "charges" "in connection with" certain enumerated actions are excluded from coverage. The terms utilized in the exclusion - assault, felony, illegal act, strike, civil disorder, riot, or the intentional act of another during an altercation in which the Covered Person participated other than as a spectator- are undefined, in some cases overlapping and, on the whole, ambiguous.

89.

It is eminently reasonable to construe Exclusion 61 as providing a basis for denial of claims resulting from voluntary and intentional participation in civil unrest or an altercation.

90.

It is equally reasonable to read Exclusion 61 and never contemplate its applicability to claims for treatment of injuries sustained by an insured such as Janai Sharkey in a vehicular accident, which occurred when her blood alcohol concentration may have been in excess of the limit established by Louisiana law.

91.

There has been no adjudication of Janai Sharkey's actions on 08/05/18 which would characterize same as illegal conduct.

92.

An insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law or public policy [*Marcus v. Hanover Ins. Co.*, 98-2040 (La.6/4/99), 740 So.2d 603, 606].

93.

Therefore, even if the language contained in Exclusion 61 is not ambiguous, which is denied,, excluding health benefits coverage for otherwise covered expenses alleged to be "in connection

Page 16 of 20



Certified True and Correct Copy
CertID: 2019081300842

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

with" a Plan enrollee's "illegal act" is contrary to public policy which favors coverage of claims for a contribution/premium-paying Plan enrollee, who is a full-time employee of the Plan's sponsor.

94.

The public policy purpose of deterrence, which has been identified as the judicial basis for the enforcement of so-called "criminal act" exclusions in liability policies, is not served by the application of Exclusion 61 to the claims submitted by Janai Sharkey's health care providers.

95.

Indeed, a "criminal act" exclusion in a liability policy deters an insured from engaging in conduct society has deemed criminal because he/she is put on notice by the exclusionary language that he/she will have no insurance coverage for a claim made against him/her by a person harmed by a proposed course of action.

96.

However, the health insured's personal interest in self-preservation will provide a sufficient basis for conducting one's affairs in a manner designed to avoid injury to onself.

97.

Thus, deterrence of conduct as a public policy objective is ill-suited for health insurance. If it was otherwise, then it would be acceptable for health insurers to exclude coverage for an array of conduct that may result in injuries and illnesses which result in the submission of claims for health benefits. One can conceive of coverage exclusions for claims arising from medical treatment for injuries and/or illnesses resulting from the consumption of fat-laden foods and sugary drinks or seeking to take a "selfie" photograph from a precipice deemed dangerous by the health insurer.

98.

Furthermore, a denial of health benefits coverage to a contribution/premium-paying health insured whose conduct results in injury to himself does have the deleterious public policy result of re-allocating the entire cost of the treatment from the contribution/premium-receiving health insurer to the contribution/premium-paying health insured.

99.

Janai Sharkey did not intend to drive while intoxicated. Rather, she made a determination, based upon her personal history and the amount of alcohol she had consumed, the amount of food she had eaten and the amount of time which had transpired since her last drink, that she was not

Page 17 of 20


**Certified True and Correct Copy**
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

intoxicated when she operated a motor vehicle on 08/05/18.

100.

Janai Sharkey made a mistake in judgment, not a decision to engage in an illegal act.

101.

As the Plan provision contravenes public policy, Exclusion 61 should not be enforced against Janai Sharkey.

102.

Medova/Lifestyle should be compelled to provide coverage for the health benefits claims submitted by Janai Sharkey's health care providers.

## RECOVERY REQUESTED BY THE SHARKEYS FROM MEDOVA/LIFESTYLE

103.

As to each denial by Medova/Lifestyle of a claim submitted by one of Jack Benton Sharkey's health care providers, Plaintiffs, Janai Sharkey and Jack J. Sharkey, seek recovery of damages equal to the amount of each health care provider claim.

104.

In the alternative, as to each denial by Medova/Lifestyle of a claim submitted by one of Jack Benton Sharkey's health care providers, Plaintiffs, Janai Sharkey and Jack J. Sharkey, seek recovery of damages equal to the amount of benefits payable by Medova/Lifestyle under the terms of the Plan.

105.

Plaintiffs, Janai Sharkey and Jack J. Sharkey, likewise seek recovery of any penalty, stipulated damage or similar augmented recovery prescribed by applicable law for Medova/Lifestyle's acts and/or omissions relating to each denial of a claim for benefits submitted by one of Jack Benton Sharkey's health care providers.

106.

Plaintiffs, Janai Sharkey and Jack J. Sharkey, likewise seek recovery of attorney's fees relating to this action seeking coverage of claims for benefits submitted by Jack Benton Sharkey's health care providers and wrongfully denied by Medova/Lifestyle.

107.

As to each denial by Medova/Lifestyle of a claim submitted by one of Janai Sharkey's health


**Certified True and Correct Copy**
CertID: 2019081300842

*Agger Hulzy*
East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

care providers, Plaintiffs, Janai Sharkey and Jack J. Sharkey, seek recovery of damages equal to the amount of each health care provider claim.

108.

In the alternative, as to each denial by Medova/Lifestyle of a claim submitted by one of Janai Sharkey's health care providers, Plaintiffs, Janai Sharkey and Jack J. Sharkey, seek recovery of damages equal to the amount of benefits payable by Medova/Lifestyle under the terms of the Plan.

109.

Plaintiffs, Janai Sharkey and Jack J. Sharkey, likewise seek recovery of any penalty, stipulated damage or similar augmented recovery prescribed by applicable law for Medova/Lifestyle's acts and/or omissions relating to each denial of a claim for benefits submitted by one of Janai Sharkey's health care providers.

**WHEREFORE**, Plaintiffs, **JANAI SHARKEY AND JACK J. SHARKEY**, pray that the defendant be served and cited to appear and answer this petition and, after all due proceedings are had, for judgment in their favor and against Defendant, **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC d/b/a LIFESTYLE HEALTH PLANS**, for all damages as are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, plus any legally-prescribed penalties and/or damages plus attorney's fees, for reimbursement of all court costs and for all other equitable relief allowed by law.

Respectfully submitted by:

Keith P. Richards (LSBA #22564)
**KEITH P. RICHARDS, A.P.L.C.**
6513 Perkins Road
Baton Rouge, LA  70808
Telephone: (225) 767-3755
Facsimile: (225) 225-767-4486
Electronic Mail: keith@kprlawfirm.com
-and-
Steven J. Moore (LSBA #20972)
**STEVEN J. MOORE LLC**
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: 225-767-7778
Facsimile: 225-757-0106
Electronic Mail: steven@stevenmoorelaw.com

**SERVICE INFORMATION
ON NEXT PAGE**

Page 19 of  20



Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**PLEASE SERVE:**

MEDOVA HEALTHCARE FINANCIAL GROUP, LLC
d/b/a LIFESTYLE HEALTH PLANS,
through its registered agent for service of process,
National Registered Agents, Inc.
3867 Plaza Tower Drive
Baton Rouge, LA 70816

Page 20 of  20


Certified True and
Correct Copy
CertID: 2019081300642

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
8/13/2019 12:26 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**CT Packing Slip**

CT Corporation

**UPS Tracking # :** 1ZX212780102113592

**Created By :** Ruchi Bhatnagar

**Created On :** 08/16/2019 06:05 PM

**Recipient :**

| **Daniel Whitney** | |
|---|---|
| Title : | -- |
| Customer : | Medova Healthcare Financial Group, LLC |
| Address : | 345 N Riverview St Ste 600 |
| Email : | dan.whitney@medova.com |
| Phone : | 316-616-6160        Fax :    - |

**Package Type :** Envelope

**Items shipped :** 1

| Log # | Case # | Entity Name |
|---|---|---|
| 536071638 | C686454 | Medova Healthcare Financial Group, LLC |

 CT Corporation

**Service of Process Transmittal**
08/16/2019
CT Log Number 536071638

TO:     Daniel Whitney
        Medova Healthcare Financial Group, LLC
        345 N Riverview St Ste 600
        Wichita, KS 67203-4265

RE:     **Process Served in Louisiana**

FOR:    Medova Healthcare Financial Group, LLC  (Domestic State: KS)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JANAI SHARKEY AND JACK J. SHARKEY, PLTFS. vs. MEDOVA HEALTHCARE FINANCIAL GROUP, LLC, ETC., DFT. |
| **DOCUMENT(S) SERVED:** | CITATION, PETITION |
| **COURT/AGENCY:** | 19th Judicial District Court, Parish of East Baton Rouge, LA<br>Case # C686454 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | National Registered Agents, Inc., Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/16/2019 at 08:30 |
| **JURISDICTION SERVED :** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | Within 15 days after you have received these documents |
| **ATTORNEY(S) / SENDER(S):** | KEITH P. RICHARDS<br>KEITH P. RICHARDS, A.P.L.C.<br>6513 Perkins Road<br>Baton Rouge, LA 70808<br>225-767-3755 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780102113592<br><br>Email Notification,  Daniel Whitney  dan.whitney@medova.com |
| **SIGNED:**<br>**ADDRESS:** | National Registered Agents, Inc.<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816-4378 |
| **For Questions:** | 954-473-5503 |

Page 1 of  1 / RB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Manifest Id 1398112          Package Id 36

1.0 LBS    LTR          1 OF 1

MARA VELASCO
2149323601
CT - DALLAS SOP TEAM
1999 BRYAN STREET
DALLAS TX 75201

**SHIP TO:**
DANIEL WHITNEY
3161666160
MEDOVA HEALTHCARE FINANCIAL GROUP,
345 N RIVERVIEW ST STE 600
**WICHITA  KS  67203**

## KS 672 9-03



## UPS NEXT DAY AIR

## 1

TRACKING #: 1Z X21 278 01 0211 3592



BILLING: P/P

Reference No.1: SOP/2401130/536071638/CT SOP Custo

X0L.19-08.18          NV45 15.0A 07/2019

Envelope: UPS_LETTER_CENTER WINDOW
Total Pages: 23
SafetySeal(101761)

RECEIVED
AUG 2 0 2019
BY: ...............